**ROSE LAW GROUP, PC**
7144 E. Stetson Drive, Suite 300
Scottsdale, Arizona 85251
Phone: 480.505.3936
Fax: 480.505.3925
Samuel Doncaster, Esq., State Bar No.: 028541
E-Mail: docket@RoseLawGroup.com
*Pro Hac Vice Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**

**THE WESTERN DISTRICT OF MISSOURI**

**SOUTHERN DIVISION**

| | |
|---|---|
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID FANDEL, TRUSTEE OF THE D&D FOUNDATION TRUST,<br><br>Defendant. | Case No.: 6:15-CV-03369-BP<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS** |

The Company issued a title insurance policy requiring it to indemnify within thirty days after "liability and the extent of loss or damage has been definitely fixed." A Missouri court issued a judgment adverse to David Fandel's insured title. That judgment included a survey mapping the exact land he lost. 345 days have passed since the judgment fixed Mr. Fandel's damages, and the Company has not paid Mr. Fandel one penny in policy benefits.

Despite that judgment, the Company sued for a declaration that Mr. Fandel's "loss or damage is not definitely fixed."[1] The Company further contends it "has no duty to indemnify Defendant David Fandel . . . for loss or damage arising from Empire's claim and the resulting Judgment."[2]

---

[1] Complaint [Doc. 1] at 11.
[2] Complaint [Doc. 1] at 11.

The Company's excuse for withholding policy benefits is that the Company and Mr. Fandel disagree regarding the diminution in value caused by the failure of title. The Company has not cited one statute, case, regulation, or policy provision authorizing it to withhold policy benefits solely because of a disagreement regarding value. All of the authority cited by both sides in this matter contradicts the Company's position. A federal district court construing identical policy language held that "a loss in a title insurance policy occurs when the interest in the property is affected, not when loss amount has been 'definitely ascertained.'"[3] The motion to dismiss quoted that Court's observation that "[t]here is nothing in the policy's Conditions and Stipulations section that defines a loss as "definitely fixed" only when a precise monetary value can be assigned to the property."[4] The Company did not and cannot respond to that observation with a citation to any portion of Fandel's policy indicating that a loss does not become fixed until the Company and the insured agree on its value.

*Davis*, a Missouri case with a similar holding recognized that that a loss becomes definitely fixed upon entry of judgment adverse to the insured title.[5] The Oklahoma case cited in the Company's response brief recognized the same controlling rule. Therefore, it distinguished *Davis* because "the insurer in *Davis* completely denied liability under the policy ***even after the insured brought its own unsuccessful unlawful detainer action against the adverse claimant***."[6] In other words, the Oklahoma case and *Davis* both recognize that a judgment adverse to an insured title is a triggering event for a duty to indemnify in an ALTA owner's title policy.

The three principal cases cited by both parties speak in unison. A judgment adverse to an insured title definitely fixes the insurer's liability to indemnify and the extent of the insured's loss. The judgment adverse to Fandel definitely fixed the Company's liability. It also definitely fixed Fandel's extent of loss.

---

[3] *U.S. Bank, Nat. Ass'n v. First Am. Title Ins. Co.*, 944 F. Supp. 2d 386, 399 (E.D. Pa. 2013).
[4] *Id.*
[5] *See*, *Davis v. Stewart Title Guar. Co.*, 726 S.W.2d 839, 851-52 (Mo. App. 1987).
[6] *OPY I, LLC v. First American Title Ins. Co., Inc.*, 350 P.3d 163, 168-69 (Ok. Civ. App. 2014) (emphasis added).

The Company cannot escape the uniform holding of every case cited by either party, so its principal argument is that a lower pleading standard applies. It claims it may continue its case regardless of the merits as long as it disagrees with Fandel regarding policy interpretation. Once again, the Company is wrong. The Eighth Circuit holds that "[t]he Federal Rules of Civil Procedure apply to declaratory judgment actions, *see* Fed.R.Civ.P. 57, and thus the plaintiffs must comply with the pleading requirements of Rule 8(a)."[7] Of course, the Eighth Circuit plaintiffs also claimed they disagreed with the defendants. But once the court determined that they had no right to the particular relief they sought, it affirmed the dismissal.[8]

The Company's pleadings reveal that a Missouri trial court's final judgment definitely fixed Fandel's extent of loss. Its suit for a contrary declaration fails as a matter of law.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. The Company's complaint fails because it admits facts that disqualify it from receiving the declaration it seeks.**

The Declaratory Judgments Act is strictly remedial in nature.[9] It does not create substantive rights.[10] It creates a new procedure for adjudicating existing rights.[11] Because the Declaratory Judgments Act is procedural, a plaintiff seeking declaratory relief must plead and prove facts showing the substantive rights he wishes to vindicate.[12] For example, if an insurer seeks a declaration of non-liability, non-liability is a substantive right.[13] The plaintiff must plead and prove the facts supporting non-liability.[14] Pleading a subjective disagreement is not enough to survive a motion to dismiss.[15]

---

[7] *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 547 (8th Cir. 2013).
[8] *Id.*
[9] *First Federal Sav. And Loan Ass'n of Harrison, Ark. v. Anderson*, 681 F.2d 528, 533 (8th Cir.1982).
[10] *Cas. & Sur. Co. v. Herman*, 405 F.2d 121, 124 (8th Cir. 1968).
[11] *Id.*
[12] *Travelers Ins. Co. of Hartford, Conn. v. Drumheller*, 25 F. Supp. 606, 607 (W.D. Mo. 1938).
[13] *Id.*
[14] *Id.*; *accord Rishell v. Med. Card Sys., Inc.*, 925 F. Supp. 2d 211, 221 (D.P.R. 2013).
[15] *See*, *id.*

Applying this rule, the Eighth Circuit recently affirmed the dismissal of a complaint for declaratory judgment regarding note acceleration. In *Karnatcheva v. JPMorgan Chase Bank, NA*, the plaintiffs sought a declaration of "whether the notes were properly accelerated by the correct party."[16] The Eight Circuit held that "The Federal Rules of Civil Procedure apply to declaratory judgment actions, and thus the plaintiffs must comply with the pleading requirements of Rule 8(a)."[17] It also held that "the relevant pleadings here fail to meet the Rule 8(a) standards because they lack 'sufficient factual matter, accepted as true,' that raise plausible questions as to the rights of parties to accelerate the mortgages."[18] In other words, the plaintiffs had to plead facts adequately challenging the defendants' rights to accelerate the notes. Their failure to do so justified dismissal, and disagreement regarding the interpretation of the acceleration clause did not prevent dismissal.

Applying that precedent, the Company's allegation that it disagrees with Mr. Fandel regarding the application of the policy does not satisfy Rule 8. To obtain a declaration of non-liability for policy benefits, the Company must plead facts showing it is not liable under the terms of the policy. In other words, the Complaint must show that Fandel's loss is not definitely fixed. It does the opposite. It admits the final judgment.[19] It admits that the judgment included a survey of the exact land Fandel lost.[20] That definitely fixed Fandel's loss, so the Company's claim fails.

## II. The Missouri trial court's judgment definitely fixed the Company's liability and Mr. Fandel's extent of loss.

The Complaint admits that the Missouri trial court entered final judgment adverse to Mr. Fandel's insured title. The Complaint further admits that the judgment included a survey of the exact extent of land Fandel lost. As a matter of law, liability and the extent of loss or damage has been definitely fixed by that judgment. So the Company's request for a declaration that "loss or damage is not definitely fixed" fails.[21]

---

[16] *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 546 (8th Cir. 2013).
[17] *Id.* at 547 (internal citation omitted).
[18] *Id.*
[19] Complaint [Doc. 1] ¶¶ 24-32.
[20] Complaint [Doc. 1] ¶¶ 31-32.
[21] Complaint [Doc. 1] at 11.

-4-

***II.A  Controlling Missouri precedent dictates that a Missouri judgment fixes liability and the extent of loss.***

The controlling Missouri precedent is *Davis v. Stewart Title Insurance Company*.[22] *Davis* analyzes nearly identical language requiring payment within thirty days after "liability has been definitely fixed in accordance with the conditions of this policy."[23] Liability became fixed when a trial court entered judgment adverse to the insured title.[24]

The Company asks the Court to not "blindly follow" controlling precedent because an out of state court distinguished *Davis*.[25] The Company's request that the Court ignore Missouri authority fails because the Court must apply Missouri law.[26]

The Company's request to substitute Oklahoma law for Missouri law also fails because the Oklahoma case applied the same rule as *Davis*. Both cases recognized that a trial court judgment adverse to the insured title is a triggering event for an insurer's duty to indemnify. *OPY I* held that an insurer had no duty to indemnify prior to that judgment.[27] *Davis* found an insurer liable for continuing to withhold payment after that judgment.[28]

In *OPY I*, the insured alleged that a title insurer's failure to intervene in litigation among third parties that related to the insured title was a breach of the ALTA policy.[29] The defendant insurance company "chose to wait until the conclusion" of the underlying litigation before it took action.[30] *OPY I* found that this delay did not breach the ALTA policy. *OPY I* distinguished *Davis* on the ground that "the insurer in *Davis* completely denied liability under the policy even after the insured brought its own unsuccessful

---

[22] 726 S.W.2d 839 (Mo. App. 1987).
[23] *Id*. at 851-52.
[24] *See*, *id*.
[25] [Doc. 17] at 7.
[26] *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").
[27] *OPY I, LLC v. First American Title Ins. Co., Inc.*, 350 P.3d 163, 168-69 (Ok. Civ. App. 2014).
[28] *See*, *Davis v. Stewart Title Guar. Co.*, 726 S.W.2d 839, 851-52 (Mo. App. 1987).
[29] *OPY I, LLC v. First American Title Ins. Co., Inc.*, 350 P.3d 163, 163-64, ¶¶4-5 (Ok. Civ. App. 2014). The Court summarized the insured owner's statement of the issues on appeal as follows: "Plaintiff argues the trial court erred in concluding the title insurance policy did not impose an affirmative duty on Defendant to confirm Plaintiff's title. Additionally, Plaintiff challenges the trial court's finding the expungement of the *lis pendens* notices eliminated any cloud on Plaintiff's title considering the continuing nature of the Yavuz litigation after the closing." *Id*.
[30] *Id*. at 169.

unlawful detainer action against the adverse claimant."[31]

The common rule articulated in *Davis* and *OPY I* is that entry of a judgment adverse to an insured title creates a duty to indemnify under an ALTA owner's policy. *OPY I* held that an insurer was not liable for waiting until then. It did not immunize insurers which withhold indemnification after a final judgment fixed the extent of an insured's loss. Like the insurer in *Davis*, the Company's duty to indemnify ripened when a trial court entered judgment adverse to the insured title. *Davis* and *OPY I* speak in unison on that issue.

### *II.B.  Another federal court construing identical policy language agreed that a trial court judgment fixes liability and extent of loss.*

Another federal court has considered the exact Section 12(b) language at issue in this case and reached the same holding as *Davis*. In *U.S. Bank*, the plaintiff sued First American Title Insurance Company for breach of a title insurance contract.[32] That contract included a Section 12(b) worded identically to the one in the Complaint.[33] The insurer argued the statute of limitations as an affirmative defense.

The Court began its statute of limitations analysis by considering when payment was due under the contract.[34] In other words, it determined when "liability and the extent of loss or damage has been definitely fixed."[35] The Court noted: "[i]t is hornbook law that a statute of limitations begins to run as soon as the right to institute suit arises."[36] So the statute of limitations defense depended on when Section 12(b) of the ALTA policy required the insurer to pay.

U.S. Bank unsuccessfully made the same argument the Company makes here: "its loss was never 'definitely fixed,' as required in order to receive payment for the loss under the title insurance policy."[37] Like the Company, U.S. Bank further contended that the loss

---

[31] *Id.* at 168-69.
[32] *U.S. Bank, Nat. Ass'n v. First Am. Title Ins. Co.*, 944 F. Supp. 2d 386, 390 (E.D. Pa. 2013).
[33] *Id.* at 399 ("When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.").
[34] *Id.* at 399-400.
[35] *See*, *id.*
[36] *Id.* at 400 (quoting *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042–43 (Pa.Super.Ct.1999)).
[37] *Id.* at 399.

was not definitely fixed because "the loss following the sheriff's sale was not one in which a fixed monetary value was readily ascertainable, because the value of the Fekos property was in dispute."[38]

The court rejected that argument. It concluded that U.S. Bank lost a fixed and definite interest in the property when a sheriff's sale occurred. Within thirty days, First American was in breach of the policy, and U.S. Bank could have sued to enforce it.[39] In other words, "liability and the extent of loss" became fixed when a trial court rendered judgment adverse to the insured owner's title. The insurer should have paid policy benefits within thirty days of that judgment. When the insurer did not timely pay, a cause of action for breach of contract accrued, and the statute of limitations began running.

U.S. Bank's application of the statute of limitations required it to determine when a claim for breach of the ALTA policy accrued. That accrual determination depended on when payment was due pursuant to Section 12(b) of the title insurance policy. That policy had identical language to the one in this case, so *U.S. Bank's* application of phrase "liability and the extent of loss or damage has been definitely fixed" is relevant to this Court's application of the same phrase. As a matter of law, both liability and the extent of loss were fixed by the Missouri judgment.

**III.    A valuation dispute does not prevent a loss from becoming fixed.**

*U.S. Bank* observed that "[t]here is nothing in the policy's Conditions and Stipulations section that defines a loss as "definitely fixed" only when a precise monetary value can be assigned to the property." In other words, liability and the ***extent*** of loss may become fixed while the insurer and the insured disagree regarding the ***value*** of the loss. Tellingly, the Company has not cited one case, statute, or policy provision indicating that a dispute regarding the ***value*** of a loss precludes the ***extent*** of loss from being definitely fixed. While the Company lacks authority for its argument, it made several variations of its contention that a valuation dispute prevents a loss from being fixed, and each fails.

---

[38] *Id.* at 399.
[39] *Id.* at 399-400.

### III.A. *No appraisal requirement.*

The Company contends that Fandel's "loss is not fixed because it is based on a deficient and improper appraisal report."[40] The Company's contention fails because the policy language does not require Fandel to produce an appraisal before he may receive policy benefits. So, regardless of whether the Company's complaints about Fandel's appraisals are true, the judgment fixes the Company's liability to pay and Fandel's extent of loss, and the Company is not entitled to a contrary declaration.

The Company's contention also fails because the Company has its own appraisal. It contends that its appraisal is correct. In fact, the Company appears to contend that its appraisal reflects the exact dollar value of Fandel's loss. Even if the existence of a perfect appraisal were a pre-requisite to a loss becoming fixed, the Company's claim that it produced one prevents it from receiving a declaration that the loss is not fixed. Moreover, the mere fact that the loss can be appraised demonstrates that the extent of loss is fixed, regardless of whose appraisal is better.

### III.B. *No requirement of acquiescence.*

The Company also unartfully contends that "Defendant has simply demanded an amount that does not comply with the Policy or the Conditions and Stipulations set forth therein – both of which are conditions precedent to payment." [41] While its brief is not completely coherent, the Company appears to contend either 1) that Fandel's submission of an appraisal in an amount the Company disagrees with divests him of policy benefits, or 2) that Fandel may not have any policy benefits until he demands the exact amount the Company agrees with. Both of these arguments fail.

No provision in the policy requires that Fandel submit any appraisal. So the Company's disagreement with Fandel's appraisal does not prevent liability or the extent of loss from becoming fixed. If the Company disagrees with Fandel's appraisal, it should still pay the actual diminution in value caused by the failure in title. And, if the Company were

---

[40] The Company wrongly contends that Fandel failed to address this in his original motion. To the contrary, he specifically cited U.S. Bank and quoted its observation that valuation concerns do not prevent liability or the extent of loss becoming fixed.
[41] Response [Doc. 17] at 2.

acting in good faith, it would tender the diminution in value found in its appraisal without requiring that Fandel waive any objection to that appraisal as a pre-condition to payment.

Relatedly, the Company's duty to indemnify Fandel does not depend on him demanding an exact or perfect amount. Instead, once Fandel's extent of loss becomes fixed, the Company must make an appropriate investigation and pay the diminution in value caused by the failure of title within thirty days. No provision in the policy requires Fandel to demand an exact or correct amount before the Company must pay.[42]

### III.C. *No requirement of subjective agreement.*

Finally, the Company contends that the existence of a "dispute over the amount of liability" prevents liability from being definitely fixed.[43] And it seeks a declaration that it has no duty to indemnify until liability is fixed. In other words, the Company seeks a declaration that it may withhold payment for as long as it and Fandel subjectively disagree regarding the amount.

That contention defies *U.S. Bank*. It also defies *Davis's* holding that the entry of judgment adverse to the insured title ripens an insurer's duty to indemnify under an ALTA policy. Most importantly, it defies common sense. If a "dispute over the amount of liability" prevented damages from being definitely fixed, title insurance companies would never have to pay claims. The ALTA policy does not require payment until after the extent of loss becomes definitely fixed. If that did not occur for as long as the Company and the insured have any subjective disagreement about the value of the lost property, ALTA policies would be illusory contracts. Insurance companies would never have to pay any claims because they always disagree with policy holders regarding the amount due. The Company's suit for a declaration that would leave every contract it enters illusory must fail.

---

[42] In fact, the "Proof of Loss" portion of the policy [Doc. 1 Ex. 1, § 5] requires only that Fandel describe the defect in title, and, to the extent possible, the basis of calculating the amount of damage or loss. Nothing in the Complaint disputes that Fandel did that. In light of the relatively low bar for a proper proof of loss, the Company's contention that Fandel must submit a full and proper appraisal as a "condition[] precedent to payment" is so outrageous that it may constitute a repudiation of the entire contract. Tellingly, the Company fails to support this contention with any citation to the policy.
[43] Response [Doc. 17] at 6.

## CONCLUSION

The Company correctly admits that this case turns on contract interpretation.[44] The entire contract is attached as Exhibit 1 to the Complaint, so the Court may construe the contract as a matter of law. The unanimous holdings of *Davis*, *OPY I* and *US Bank* dictate that the Company's liability and Fandel's extent of loss became fixed when a Missouri judgment divested Fandel of an exact, surveyed parcel of land. The Company's contract construction fails as a matter of law, and the Court must dismiss its complaint.

**RESPECTFULLY SUBMITTED** this 23rd day of December, 2015.

**ROSE LAW GROUP, PC**

By: /s/ *Samuel Doncaster*
Samuel Doncaster
7144 East Stetson Drive, Suite 300
Scottsdale, Arizona 85251
(480) 505-3936
(480) 505-3925 fax
*Pro Hac Vice Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of December, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Nicholas P. Van Deven
SANDBERG PHOENIX & VON GONTARD PC
600 Washington Ave – 15th Floor
St. Louis, MO 63101

Meghan E. Lewis
SANDBERG PHOENIX & VON GONTARD, PC
7450 W. 130th Street, Suite 140
Overland Park, KS 66213
*Attorneys for Plaintiff*

By: /s/ *Rose Reynolds*

---

[44] Response [Doc. 17] at 1.